DAVIDSON ET AL. *v.* PLANT.

[74 South. 328, Division B.]

1. BILLS AND NOTES. *Release. New note by different party.*
   The execution and acceptance of new notes with a new principal obligor releases the old note for which the renewal notes were given.

2. PRINCIPAL AND SURETY. *Agreement as to application of payments.*
   Where P. signed a note of M. to a bank apparently as co-maker but in reality as a surety, an agreement with the bank "that when M. shall pay into the bank upon his present indebtedness the amount that P. is indorser for him, that the said P. shall then be released of his indorsement and obligation in full upon the note of said M." is valid and binding on the parties and in such case it is immaterial that P. is a director of the bank.

3. SAME.

 The benefits of such an agreement as between the bank and P. are not varied by the fact that P. was a director of the bank, that this note was carried for several years as a part of the bank's assets; that is was reported along with the other bills receivable to the directors at their regular meetings and that P. at none of these meetings advised the board of directors that he was relying upon the written agreement in question, but on the contrary, permitted the bank to discount the note and use it as a basis of credit, the party to whom the bank assigned or pledged the note at any time not being a party to the litigation and not complaining, and the bank not being injured by such conduct of P.

APPEAL from the circuit court of Lafayett county.

HON. J. L. BATES, Judge.

Suit by E. O. Davidson and others, receivers against S. H. Plant. From a judgment for defendant, plaintiffs appeal.

This suit was begun by the appellants as receivers of the defunct Merchants' & Farmers' Bank of Oxford, Miss., against S. H. Plant on a note for seven thousand two hundred and fifty-seven dollars and sixty cents, dated July 3, 1909, signed by R. H. McElroy and S. H. Plant. The Oxford Dry Goods Company was heavily indebted to the Merchants' & Farmers' Bank; and S. H. Plant, who was a director in the dry goods company, and was also a director and vice president of the bank, was a co-maker with the dry goods company on a note for six thousand dollars evidencing part of the indebtedness due by the dry goods company to the bank. The dry goods company sold its business to McElroy, and McElroy gave his notes to the bank for twenty-four thousand dollars in place of the notes of the dry goods company, which notes were placed to the credit of McElroy, and McElroy then gave his check to the dry goods company for twenty-four thousand dollars and this check was deposited by Hampton, manager of the dry goods

company, to the credit of the dry goods company. The joint note of the dry goods company and Plant for six thousand dollars not having been paid at the time the sale was made to McElroy, a new note for six thousand dollars and interest (seven thousand, two hundred and fifty-seven dollars and sixty cents) was executed by McElroy, and Plant signed as comaker. This note is included in the total of twenty-four thousand dollars in notes given by McElroy to the bank. At the time Plant signed this note the president of the bank gave him the written agreement appearing in the notice given under the plea of the general issue, which is hereinafter set out. It seems that McElroy was not aware of the execution of this agreement, and afterwards he paid several thousand dollars to the bank on his notes and took up several of them. No part of the amount paid by McElroy to the bank was credited on the note forming the basis of this suit. After the bank went into the hands of receivers this suit was brought against Plant as a maker of the note.

The defendant pleaded the general issue, and gave notice under the general issue as follows:

"Plaintiff will take notice, that on the trial of this case the defendant will offer evidence by way of affirmative defense to show as follows, to wit:

"(1) That defendant was only surety on said note sued on; that he received no benefit whatever of said loan, but that the principal therein, R. H. McElroy, received the sole and only benefits thereunder.

"(2) That defendant signed said note sued on upon certain conditions as evidenced by a certain instrument of writing, signed and delivered to him by W. D. Porter, president of the Merchants' & Farmers' Bank of Oxford, Miss., which said contract plaintiffs represent, under the law, in this cause, in the following words and figures to wit:

"'W. D. Porter, President Merchants' & Farmers' Bank, Oxford, Miss., August 13, 1909. It is agreed and

understood between S. H. Plant and this bank that when
R. H. McElroy shall pay into the bank upon his present
indebtedness the amount that S. H. Plant is indorser
for him, that the said S. H. Plant shall then be released
of his indorsement and obligations in full upon the note
of the said McElroy. The payment shall be reckoned
out of the first amounts paid by McElroy upon his in-
debtedness.

    " 'Merchants' & Farmers' Bank,
      " 'By W. D. PORTER, President.' '

"Defendant will show that upon this condition said de-
fendant signed said note at the instance and request of
said W. D. Porter, president of said bank, for the use and
benefit of said bank, and, furthermore, defendant will
show that said R. H. McElroy, principal in said note
sued on, paid into said bank a sum much greater than the
amount of said note, and that no application whatever
was ever made of such money, or any part of the same,
to said note.

"(3) That there was no consideration for defendant
signing said note.

"(4) Payment of said note by R. H. McElroy, princi-
pal."

Plaintiff gave notice that he would introduce testimony
to show that the agreement was without consideration and
*ultra vires,* and had been waived by the defendant.

At the close of the testimony a motion was made by
each party for a peremptory instruction, and the follow-
ing ruling was made by the court after refusing both of
the peremptory instructions:

"The Court overrules the motion for the plaintiff and
the defendant for a peremptory instruction. The court
holds that the Plant estate is estopped to plead any right
or privilege accruing to S. H. Plant by virtue of the
agreement signed 'Merchants' & Farmers' Bank, by W.
D. Porter, President,' the proof showing that Plant was
director and vice president of said bank, participated in
the directors' meetings, and knew that the bank was

claiming that note as an asset, and by virtue of his office and his conduct in the premises he was estopped to plead any right that may have accrued to him under and by virtue of said agreement made after the signing of said note sued on by McElroy. The court submits this case to the jury on the question as to whether the twenty-four thousand dollar check testified to by Hampton and McElroy was accepted in full payment of the original note which the one sued on was given in lieu thereof.''

The jury returned a verdict for the defendant, and the receivers appeal.

*D. I. Hutchinson* and *Creekmore & Stone,* for appellant.

*Falkner, Russell & Falkner,* for appellee.

STEVENS, J., delivered the opinion of the court.

We think the right result was reached by the trial court in this case. The note sued on was a renewal of the old note for six thousand dollars executed by the Oxford Dry Goods Company and S. H. Plant, in favor of the Merchants' & Farmers' Bank. The execution of the new note released the old corporation, the Oxford Dry Goods Company, and substituted an entirely new maker, R. H. McElroy. Mr. Plant, when the new note was presented to him for execution, in the exercise of his inherent right to make his own contracts, then had the absolute right either to execute or decline to execute the new paper. It appears that he agreed to execute the new note upon the condition evidenced by the separate written contract ''that when R. H. McElroy shall pay to the bank upon his present indebtedness the amount that S. H. Plant is indorser for him, that the said S. H. Plant shall then be released of his indorsement and obligation in full upon the note of the said McElroy. The payments shall be reckoned out of the first amounts paid by McElroy upon his indebtedness.'' This separate written contract ex-

ecuted by the Merchants' & Farmers' Bank in favor of
Plant did not contradict or vary the terms of the note.
It simply stipulated that this note should be paid out of
the first moneys McElroy turned into the bank upon his
general line of indebtedness. This was a legitimate un-
dertaking on the part of the bank, and the mere fact that
Mr. Plant was at that time a director in the bank in
no wise precludes him from claiming the benefits of this
agreement. As to the bank, Mr. Plant was a comaker on
the note; as to McElroy, he was a surety. Mr. Plant at
that time was a very old man, and it is most natural that
he should desire to be released from his suretyship within
a reasonable length of time.

But appellants pleaded, and the trial judge seems
to have been of the opinion, that the benfits of the writ-
ten contract executed by the bank in Plant's favor, agree-
ing that the notes should be liquidated out of the first
amounts, had been waived by Mr. Plant. This waiver is
attempted to be based upon evidence that he was a direc-
tor in the bank; that this note was carried for several
years as a part of the bank's assets; that it was reported
along with the other bills receivable to the directors at
their regular meetings; and that Mr. Plant at none of
these meetings advised the board of directors that he
was relying upon the written agreement in question, but,
on the contrary, permitted the bank to discount the note
and use it as a basis of credit. But the party to whom the
bank assigned or pledged the note at any time is not
here complaining. This is a controversy between the
bank and Mr. Plant, the original parties to the agreement.
It could hardly be said that the board of directors had
no knowledge of an agreement executed by the bank
through its president. More than this, Plant neither said
nor did anything, with reference to the note, to the hurt
or injury of the bank. The mere silence of Mr. Plant in
no wise changed the *status* of the parties. To say that
Mr. Plant, by mere silence, waived the benefits of the

private agreement in question would be a misconception of the doctrine of estoppel.

We readily subscribe to the doctrine that a director of the bank must act in good faith in all of his dealings with the institution which he is helping to manage, and cannot take advantage of his position to make an unlawful profit or be excused from his obligations. But there is here no showing of fraud. There was ample consideration for the new note. The old corporation was released, a new party was introduced, and an extension of time granted. As we see it, appellee was entitled to a peremptory instruction; and this being our view of the case, it is unnecessary to discuss the errors complained of. The jury, under an incorrect issue, brought in a correct verdict.

*Affirmed.*